*646 OPINION.
Smith:
The principal point involved in this appeal is the value of assets acquired by the petitioner in exchange for its capital stock. No question of affiliation of the petitioner with the Burdett-Rowntree Manufacturing Co. is involved. The petitioner apparently never claimed affiliation with that company and no evidence as to the stock ownership of that company or of the petitioner is before us. Since *647 the questions are numerous they will be considered in the same order in which they are stated in the preliminary statement and in the findings of fact.
1. Valuation of assets acquired at date of organization. — (a) Actual cash value of 'patents of Burdett-Rowntree Manufacturing Co. — The Burdett-Rowntree Manufacturing Co. had been in existence since 1894 and was doing a large and profitable business in 1910. Although it was engaged in three lines of business, the largest and most profitable line was that connected with street car work. This work was secured by reason of the ownership of numerous patents. These patents, together with certain other patents and applications for patents, relating to elevator doors, etc., were transferred to the petitioner and eventually the petitioner issued for such assets $240,000 capital stock. Under the agreement of transfer the Burdett-Rowntree Manufacturing Co. was to continue to manufacture under its patents. The provisions of the contract were not introduced in evidence. The books of account of the Burdett-Rowntree Manufacturing Co. showed the sale of these assets for $240,000. The Commissioner determined that the actual cash value of these assets was $162,610.88. The basis of this determination is a capitalization of the earnings of the Burdett-Rowntree Manufacturing Co. attributable to the patents during a five-year period immediately preceding the date of transfer.
The findings of fact show a very large increase in volume of business of the company during the three years preceding 1910. Many of the contracts begun in 1908 and 1909 had not been completed at the date of transfer of the assets to the petitioner, and very large profits were realized by the Burdett-Rowntree Manufacturing Co. from the completion of such contracts. The Commissioner did not take into account these profits in determining the earnings attributable to the patents during the five-year period prior to February 1, 1910.
The petitioner contends that if the value of its patents is to be predicated upon its earnings, the earnings realized during the years 1910, 1911 and 1912, from the contracts in hand but uncompleted at the date of transfer, should be taken into consideration.
We are of the opinion that the contention of the petitioner upon this point is Avell founded. The contracts from which the Burdett-Rowntree Manufacturing Co. had a large income in 1910, 1911 and 1912 were attributable to the patents owned by it prior to February 1, 1910, and assigned to the petitioner in 1910.
No hard and fast rule can be laid down for determining the value of patents paid in for capital stock of a corporation. Appeal of Gamon Meter Co., 1 B. T. A. 1124. The value is a question of fact in any case. Appeal of J. J. Gray, Jr., 2 B. T. A. 672. See also Appeals of *648 Saenger Amusement Co., 1 B. T. A. 96; Dwight & Lloyd Sintering Co., 1 B. T. A. 179; William H. Jackson Co., 2 B. T. A. 411.
In the instant case, the interested parties determined that the value of the assets to be transferred to the petitioner by the Burdett-Rowntree Manufacturing Co. was $240,000. We think that that determination is entitled to serious consideration. We are satisfied that the assets had a greater value than was placed upon them by the Commissioner, and from a consideration of the entire record we are of the opinion that $240,000 was not in excess of the cash value.
(b) Capital stock of The Pay-Within Oajr Go. — For the entire capital stock of The Pay-Within Car Co., the petitioner issued $166,750 of its capital stock. It claims that that was its actual cash value. It is true that The Pay-Within Car Co. had been in existence for only a short period, but its earnings during that period had been very large. There was a prospect that the business would continue to increase in the manner shown by the record of its earnings from November 1, 1908, to February 1, 1910. If those earnings should continue, the patents from which they arose had a very large cash value. We are of the opinion that the actual cash value was at least $166,750.
(c) Capital stock of the Ghicago Welding Go. — The petitioner claims that the actual cash value of 633 shares acquired by it was $25,000, the par value of the shares of stock of the petitioner corporation issued therefor. It appears, however, that the petitioner was to acquire the remaining 367 shares for $4,000 cash. The Commissioner determined the actual cash value of the 633 shares to be $16,938.63. The evidence of record does not warrant a cash value in excess of $16,938.63.
(d) Air-brake patents. — The Commissioner determined the actual £ash value of the air-brake patents to have been $8,469.31. In our opinion the evidence does not warrant a greater cash value.
(e) Burdett-Bowntree patents — Foreign.—Although these patents were placed upon the petitioner’s books of account at a value of $30,250, the evidence shows that the patents were never used by the Burdett-Rowntree Manufacturing Co. and were never used by the petitioner. No evidence has been adduced which would warrant a finding that the patents had a cash value.
(f) Pay-Within car patents. — There is no evidence of record that would warrant any finding of fact that these patents had an actual cash value at the date of acquisition. In the absence of evidence the Commissioner’s determination of no value must be approved.
(g) Services under contract. — The evidence shows that $3,000 par value of capital stock of petitioner was issued to Hugh L. Adams as compensation for services. All of his services were performed *649 prior to the tax years under consideration. The services were worth the par value of the capital stock issued therefor and the Board is of the opinion that the petitioner is entitled to invested capital in the amount of $3,000 in respect of such services paid for by capital stock.
2. Valuation of the capital stock of the Prepayment Gar Pales Go. as of 1911, the date acquired in exchange for their assets. — At the hearing of this case it was stipulated as follows:
On Marca 1, 1911, the taxpayer acquired 4,000 shares of the capital stools: of the Prepayment Car Sales Company, par value $100 per share. The consideration given for this stock was the patents of The Pay-Within Car Company and 60.03 per cent of the patents acquired by the taxpayer from the Burdett-Rowntree Manufacturing Company in February, 1910.
It is further stipulated that the Board may find that the cost of the 4,000 shares of stock of the Prepayment Car gales Company was the sum of (a) the value fixed by the Board as the value of the capital stock of The Pay-Within Car Company at the date acquired by the taxpayer, plus (b) 60.03 per cent of the value fixed by the Board as the value of the patents of the Burdett-Rowntree Manufacturing Company when acquired by the taxpayer in February, 1910, less the proportionate exhaustion on the patents of the Burdett-Rowntree Maufacturing Company to March 1, 1911, on the basis of a fifteen-year life.
It is further stipulated that the value so fixed shall be accepted both as the cost and the March 1. 1913, value of the said 4,000 shares of capital stock of the Prepayment Car Bales Company.
In accordance with the stipulation, it is found that 60.03 per cent of the value of the patents acquired from the Burdett-Rowntree Manufacturing Co. was $144,072; that the exhaustion of the interest in the patents to March 1, 1911, amounted to $10,405.20, and that the cost and the March 1, 1913, value of the 4,000 shares of capital stock of the Prepayment Car Sales Co. was $300,416.80.
3. Valuation of patents as of March 1,1913, for depreciation purposes. — It was stipulated by and between counsel for the petitioner and co'unsel for the Commissioner that the values of the patents that were determined by the Board might be accepted as the March 1, 1913, values, less the exhaustion occasioned by the lapse of time from the date acquired to March 1, 1913.
4. The profit, if any, realized in 1911 on the sale of certain assets to the Prepayment Oar Sales Go. for stock of that company. — It was originally the contention of the petitioner that it realized a profit in 1911 upon the sale of certain assets to the Prepayment Car Sales Co. for stock of that company. This contention was withdrawn at the hearing and is covered by the stipulation referred to above under “Valuation of the capital stock of the Prepayment Car Sales Co. as of 1911 * *
*650 5. Determination of the proper deduction from invested capital on account of inadmissible assets. — Section 326 (c) of the Revenue Act of 1918 provides:
There shall be deducted from invested capital as above defined a percentage thereof equal to the percentage which the amount of inadmissible assets is of the amount of admissible and inadmissible assets held during the taxable year.
In making up its balance sheets the petitioner showed as a liability the difference between the amount billed on uncompleted contracts and the incurred costs on such contracts. It is the contention of the petitioner that this was in error, and that in place thereof the petitioner should have shown as an asset the entire amount billed on uncompleted contracts, and, as a liability, the incurred costs.
With respect to this contention it should be noted that the entire amounts billed on uncompleted contracts appear in the balance sheets as assets either as “ accounts receivable ” or as “ cash ” or some other asset. The petitioner seeks to pad its balance sheet by adding to the asset side a certain amount representing the incurred costs, and to add a like amount to the liability side. It is the contention of the Commissioner that, if such an addition is made, the petitioner is in fact duplicating its admissible assets and that under the statute there is no provision for such deduction.
In our opinion the contention of the Commissioner upon this point is entirely correct. The original balance sheets were properly made out. Every asset of the company was listed on the asset side of the balance sheet. We see no warrant of law for increasing those assets in any particular.
6. Loss sustained on the sale of Prepayment Car Sales Co. stock in 1918. — As a result of litigation in 1915, the patents owned by the Prepayment Car Sales Co. were adjudged invalid. The market price of the stock of the company declined very rapidly. In 1918 the petitioner sold its 4,000 shares of the stock of that company, which had a cost and a fair market value on March 1, 1913, of $300,416.80, for $5,000. The Commissioner allowed the petitioner the deduction of a loss of $210,595.94. It is the contention of the petitioner that the loss sustained was $433,807.49.
We have found that the cost and the March 1, 1913, value of the stock was $300,416.80. The loss sustained upon the sale in 1918 was, therefore, that amount less $5,000, or $295,616.80.
7. Whether the petitioner is entitled to a determination of its profits taxes for the year 1918 under the provisions of section 328 of the Revenue Act of 1918. — The petitioner advanced no arguments in favor of its claim that its tax for the year 1918 should be determined under the provisions of section 328. We are of the opinion, in view of the findings made herein, that there are no features of *651 abnormality of income or invested capital which warrant such consideration.
Judgment will he entered on 15 days’ notice, under Rule 50.